23CA1934 Peo v Rios 07-16-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1934
Jefferson County District Court No. 22CR101
Honorable Christopher Zenisek, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jason Rios,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE SULLIVAN
Pawar and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 16, 2026

Philip J. Weiser, Attorney General, Frank R. Lawson, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, John Plimpton, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Jason Rios, appeals the judgment of conviction entered on a jury verdict finding him guilty of multiple counts of sexual assault on a child.  We affirm.

## I.     Background

¶ 2     Rios was the victim's legal guardian.  In January 2022, when the victim was fifteen years old, she reported to law enforcement that Rios had been sexually assaulting her for the past two years.

¶ 3     The prosecution charged Rios with five counts of sexual assault on a child.  Rios's defense was that the victim fabricated her allegations.

¶ 4     After trial, at which the victim testified, the jury found Rios guilty on all charges.  The district court merged two charges that related to the same incident and then entered a judgment of conviction on the remaining four charges.  The court sentenced Rios to twenty-four years to life in the custody of the Department of Corrections.

## II.     Discussion

¶ 5     On appeal, Rios contends the district court reversibly erred by (1) excluding a TikTok video that the victim posted online and (2) permitting the prosecutor to make an improper "golden rule"

argument during voir dire. He also contends that the cumulative impact of the court's errors requires reversal. We address and reject each contention in turn.

## A. TikTok Video

¶ 6 Rios first contends that the district court abused its discretion by excluding a TikTok video that the victim created, arguing the video was admissible as a prior inconsistent statement under section 16-10-201, C.R.S. 2025.

### 1. Standard of Review and Applicable Law

¶ 7 We review a district court's exclusion of a witness's prior inconsistent statement for an abuse of discretion. *People v. Salas*, 2017 COA 63, ¶ 30. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues the law. *Id.* But if the appellant doesn't preserve their contention in the district court, we reverse only if the court committed plain error. *Id.* at ¶ 32. Plain error is error that is both obvious and substantial. *People v. Burdette*, 2024 COA 38, ¶ 32. To meet this standard, the error must so undermine the trial's fundamental fairness as to cast serious doubt on the reliability of the judgment of conviction. *Hoggard v. People*, 2020 CO 54, ¶ 13.

¶ 8    Section 16-10-201 permits a party to introduce a witness's prior inconsistent statement if certain foundation requirements are met. The statute provides:

> (1) Where a witness in a criminal trial has made a previous statement inconsistent with [their] testimony at the trial, the previous inconsistent statement may be shown by any otherwise competent evidence and is admissible not only for the purpose of impeaching the testimony of the witness, but also for the purpose of establishing a fact to which [their] testimony and the inconsistent statement relate, if:
>
> (a) The witness, while testifying, was given an opportunity to explain or deny the statement or the witness is still available to give further testimony in the trial; and
>
> (b) The previous inconsistent statement purports to relate to a matter within the witness's own knowledge.

§ 16-10-201.

¶ 9    Provided that the statement's proponent satisfies the statute's foundation requirements, they may prove the prior inconsistent statement by any "otherwise competent extrinsic evidence." *Montoya v. People*, 740 P.2d 992, 998 (Colo. 1987). But, as with all evidence, the district court may exclude extrinsic evidence of a witness's prior inconsistent statement if the evidence is otherwise

inadmissible, rendering it "incompetent" under section 16-10-201 to prove the statement's substance. *People v. Saiz*, 32 P.3d 441, 445-46 (Colo. 2001).

¶ 10     In *Saiz*, for example, the supreme court upheld a district court's exclusion under CRE 403 of a videotaped interview containing a witness's prior inconsistent statements. *Id.* at 450-51; *see* CRE 403 (a district court may exclude relevant evidence if its probative value is substantially outweighed by the danger of, among other things, "needless presentation of cumulative evidence"). The supreme court explained, among other things, that the witness's prior inconsistent statements had already been established by a law enforcement officer's uncontested testimony, rendering the video "clearly cumulative." *Saiz*, 32 P.3d at 448. The video's proponent hadn't argued that the recording contained different statements than those elicited from the officer or that the witness's demeanor in the video would have altered the statements' meaning. *Id.* at 447. To the contrary, the video's proponent offered the videotaped statements solely to impeach the witness. *Id.*

¶ 11     Divisions of this court have leaned on *Saiz* to reach similar conclusions under section 16-10-201. *Salas* is illustrative. There,

the division relied on *Saiz* to uphold the district court's exclusion of a videotaped interview that contained a witness's prior inconsistent statements. *See Salas*, ¶¶ 33-38. The division explained that "defense counsel sufficiently confronted [the witness] with her inconsistent statements and she either explained or conceded them." *Id.* at ¶ 36. And, as in *Saiz,* the video's proponent didn't assert that anything in the videotaped interview would differ from the evidence elicited through testimony. *Id.* at ¶ 38.

### 2.    Additional Background

¶ 12    At some point before trial, the victim posted a six-second TikTok video online that featured her looking at the camera with music and text overlaid. She had a neutral facial expression at the beginning of the video, and the text said "[heart emoji]: people always lie to me I hate it." After a couple seconds, the victim started smiling and the text changed to say, "[brain emoji]: you do the same you just don't get caught."

¶ 13    During cross-examination, defense counsel asked the victim if she "sometimes say[s] untruthful things." The victim answered, "No." Defense counsel then showed the victim the TikTok video and asked whether she recognized it. The victim responded

affirmatively and confirmed that it was a fair and accurate representation of a TikTok video that she had created.

¶ 14 Defense counsel moved to admit the TikTok video, but the prosecution objected under CRE 402, CRE 403, and CRE 404. Defense counsel first argued that the video was admissible under CRE 803(3) as a statement of the victim's then-existing state of mind that showed she "lies and gets away with it," which counsel also said implicated the victim's credibility. The court expressed concern that the video was inadmissible under CRE 608(b), which prohibits introducing extrinsic evidence of specific instances of a witness's conduct to attack their credibility. The court therefore excluded the video but permitted defense counsel to confront the victim about the video and its statements. *See* CRE 608(b) (a court may, in its discretion, allow counsel to inquire into a witness's specific instances of conduct if that conduct is probative of the witness's truthfulness).

¶ 15 Defense counsel then asked the victim whether she agreed that she "published a TikTok video that indicated, quote, 'People always lie to me. I hate it. Brain emoji. You do the same thing, you just don't get caught[]'?" The victim responded, "Yes."

¶ 16    After defense counsel finished cross-examining the victim, the court posed a question from a juror: "In the TikTok, did the TikTok say, 'You do the same thing, you just don't get caught,' or, 'I do the same thing, I just don't get caught[]'?"  The victim responded, "I said, 'I do the same thing, I just don't get caught.'  Or — no.  It says, 'You do the same thing.'"

¶ 17    During the prosecution's redirect, the prosecutor attempted to clarify with the victim that she didn't intend to convey through the TikTok video that she was a liar:

> [PROSECUTOR]: And[], can you clarify again what you had just said.
>
> [VICTIM]: That the TikTok says, "You do the same thing, you just don't get caught."
>
> [PROSECUTOR]: Okay.  So it did not say 'I' in there?
>
> [VICTIM]: Yeah.
>
> [PROSECUTOR]: And along the lines of that, in there, there was the big brain emoji.  What does that mean?
>
> [VICTIM]: Like, thinking in your head.  I don't know.
>
> [PROSECUTOR]: Where have you seen that before?

[VICTIM]: It was, like, a trend on TikTok; so I just, like, followed the trend on TikTok. The video didn't really mean, like, anything.

[PROSECUTOR]: Was it, like, the big brain emoji?

[VICTIM]: Yeah.

[PROSECUTOR]: Were you broadcasting to the world that you are a liar?

[VICTIM]: No.

¶ 18    Defense counsel later returned to the TikTok video on recross-examination of the victim, asking the following questions:

[DEFENSE COUNSEL]: . . . . I want to talk to you about the meme format that was going around for a minute. Would you agree with me that the meme format was, "My heart says, and my brain says."?

[VICTIM]: No.

[DEFENSE COUNSEL]: No. Okay. So the photograph of a heart, what does that mean? In this meme format, what does it mean?

[VICTIM]: Yeah. It's like a — a heart, my heart.

[DEFENSE COUNSEL]: Like, "My heart says[]"?

[VICTIM]: Yeah.

[DEFENSE COUNSEL]: Okay. So you're saying, "My heart says people always lie to me. I hate it." Right?

[VICTIM]: Yeah.

[DEFENSE COUNSEL]: And then the second part of that is, "My brain says," right?

[VICTIM]: Yeah.

[DEFENSE COUNSEL]: And you're saying, "My brain says you do the same, you just don't get caught[]"?

[VICTIM]: Yes.

¶ 19    After the close of evidence, defense counsel began and ended her closing argument by using the victim's statements in the TikTok video to attack her credibility.

### 3.    Preservation

¶ 20    The People contend that Rios didn't preserve his argument that the district court erred under section 16-10-201 by excluding the TikTok video.  They therefore contend that we should review this contention for plain error only.  *See Salas*, ¶ 32.

¶ 21    To preserve an argument for appeal, a party must object with sufficient specificity to draw the district court's attention to the alleged error.  *People v. Cooley*, 2020 COA 101, ¶ 24.  A party hasn't preserved an argument if, on appeal, they object on grounds different than those raised before the district court.  *See People v. Ujaama*, 2012 COA 36, ¶ 37.

¶ 22    While defense counsel argued that the district court should admit the video under CRE 608 and CRE 803(3), counsel never argued for the video's admissibility under section 16-10-201. We therefore agree with the People that Rios didn't preserve his argument under the statute, limiting our review to plain error. *See Ujaama*, ¶¶ 37-38.

4.    Analysis

¶ 23    For purposes of our analysis, we will assume without deciding that the TikTok video meets section 16-10-201's foundation requirements. *See* § 16-10-201(1)(a)-(b). Even so, we can't conclude that the district court abused its discretion, let alone plainly so, by excluding the video.

¶ 24    As in *Saiz* and *Salas*, defense counsel confronted the victim about the statements she made in the video, and the victim admitted to making them. *See Saiz*, 32 P.3d at 447-48; *Salas*, ¶ 38. While the victim testified that she wasn't broadcasting to the world that she was a liar, she admitted that she stated in the video that her brain says, "You do the same thing" — always lie — "you just don't get caught." Defense counsel repeatedly highlighted that statement in closing argument.

10

¶ 25    Further, defense counsel didn't offer a reason for introducing the video beyond impeaching the victim's credibility.  *See Saiz*, 32 P.3d at 447; *Salas*, ¶ 38.  Nor did defense counsel argue that the video would alter the statement's meaning.  *See Saiz*, 32 P.3d at 447; *Salas*, ¶ 38.  And even if the video may have provided some incremental context, we can't say on this record that shielding the jury from that context amounted to plain error.  *See Saiz*, 32 P.3d at 448 ("Depending upon the particular circumstances of the case, including the other admitted or available evidence, the nature and import of nonverbal activity depicted on the tape, and the material purpose for which the tape is offered, the 'marginal' or 'incremental' probative value of the tape may be minimal or nonexistent.").

¶ 26    Accordingly, the district court didn't abuse its discretion by excluding the TikTok video.

## B.    Golden Rule Argument

¶ 27    Rios also contends that the district court erred by overruling his objection to the prosecutor's so-called golden rule questioning during voir dire of the prospective jurors.  Specifically, Rios argues that the prosecutor committed prosecutorial misconduct by asking prospective jurors to place themselves in the victim's shoes.

11

### 1. Standard of Review and Applicable Law

¶ 28    We review prosecutorial misconduct claims using a two-step framework. *Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010). "First, [we] must determine whether the prosecutor's questionable conduct was improper based on the totality of the circumstances and, second, whether such actions warrant reversal according to the proper standard of review." *Id.* We review a district court's conclusion at the first step for an abuse of discretion. *People v. Carter*, 2015 COA 24M-2, ¶ 63.

¶ 29    During voir dire, counsel may question prospective jurors to unearth any bias that may prevent a juror from being fair and impartial. *See People v. Garcia*, 2022 COA 144, ¶ 18. But counsel may not make a "golden rule" argument by asking jurors to imagine themselves in the victim's place; such arguments are improper in a criminal case outside of the capital sentencing context. *See People v. Dunlap*, 124 P.3d 780, 809 (Colo. App. 2004). A "true" golden rule argument invites jurors to place themselves in the victim's shoes and "imagine that the defendant wronged them personally." *People v. Randell*, 2012 COA 108, ¶ 92. Golden rule arguments are improper because they appeal to jurors' sympathy for the victim

and may "incite jurors to reach a verdict on the basis of bias or prejudice." *People v. Manyik*, 2016 COA 42, ¶ 28 (citation omitted); *see Randell*, ¶ 92.

### 2.  Additional Background

¶ 30    The prosecutor began her voir dire of the prospective jurors by asking about the discomfort that comes with sharing one's sexual experiences with a group of strangers:

> And so I want everyone to close their eyes. Now I want everyone to imagine a sexual experience. It can be most recent, can be older. I want you to think about the details of that. Does everyone have it? All right. Go ahead and open your eyes. [Juror H], I want you to tell the group about that sexual experience in great detail.

¶ 31    The prosecutor also asked the prospective jurors whether speaking about the experience in front of a "whole group of strangers" added to the discomfort. The venire members offered a range of responses. One member, for example, said they would be nervous, while another said they would feel empathy toward others' discomfort. One stated that sharing their sexual experience with a group of strangers would be "less bad" because they would never see the group again.

¶ 32   The prosecutor then asked Juror S, "[H]ow do you think that a young child or a teenager would feel about having to talk about a sexual experience?"  Defense counsel objected, arguing the prosecutor was making an improper "golden rule" argument by asking the prospective jurors to place themselves in the victim's shoes.  The court overruled the objection, finding that the prosecutor's question wasn't improper because she had asked only how the prospective juror would expect a child or teenager to describe a sexual experience; she didn't ask the juror to place themself in the victim's shoes.

¶ 33   The prosecutor then continued:

> [PROSECUTOR]: All right.  You can answer.
> Do you remember my question?
>
> [JUROR S]: Was it whether how a young
> person would feel if they had to explain it?  I
> am sure they would be terrified.
>
> [PROSECUTOR]: Why?
>
> [JUROR S]: Well, I think to kind of bound off of
> what I think [Juror H] said: Yeah, there's a
> pretty teratical(ph) viewpoint about sex in the
> U.S.  So it's pretty taboo to discuss it publicly.
>
> [PROSECUTOR]: How many people agree with
> [Juror H] and [Juror S], you agree that would
> be hard to talk about as a younger teenager?
> Show of hands.

¶ 34    The record doesn't reveal how many or which prospective jurors raised their hands.

### 3.    Analysis

¶ 35    We conclude, under *Wend*'s first step, that the district court didn't abuse its discretion by overruling Rios's objection to the prosecutor's questioning.  At bottom, the prosecutor never asked the prospective jurors to imagine that Rios had "wronged them personally." *Randell*, ¶ 92.  She similarly didn't ask the venire to imagine that Rios, or anyone else, had sexually assaulted them.  Nor did she ask the prospective jurors to imagine themselves having to testify about being sexually assaulted.

¶ 36    Instead, the prosecutor asked the venire to (1) imagine a sexual experience of their own; (2) think about how they would feel having to talk about the experience with a group of strangers; and (3) consider how a child or teenager would feel doing the same.  That line of questioning was a permissible way for the prosecutor to assess whether any prospective juror held a bias that would impact their ability to fairly and impartially evaluate the victim's credibility.  *See Garcia*, ¶ 18.

¶ 37    Rios's reliance on *Manyik* is misplaced.  In *Manyik*, a division of this court concluded that a prosecutor committed misconduct by assuming, or "channeling," the victim's identity during opening statements.  *Manyik*, ¶¶ 20-34.  The division analogized channeling to golden rule arguments, explaining that both techniques improperly "place the jurors in the victim's shoes by inviting them to view the case through the victim's eyes."  *Id.* at ¶ 28.

¶ 38    We recognize that some arguments, while technically not golden rule arguments, may still improperly appeal to a juror's sympathy for the victim.  *See id.* at ¶ 29.  But the prosecutor's argument here didn't rise to that level.  Unlike in *Manyik*, the prosecutor didn't speak to the venire in the first person as though she were the victim.  And to the extent the prosecutor's questioning may have suggested that the victim will experience discomfort testifying, a reasonable prospective juror would have viewed her questioning as an appeal to their common sense, not their sympathy for the victim.  *See People in Interest of J.R.*, 2021 COA 81, ¶¶ 48, 50 (concluding jurors would assume the prosecutor's comment that "testifying about sexual abuse was hard for young

16

children" was based on the prosecutor's "everyday experience and common sense").

¶ 39    Accordingly, the district court didn't err by rejecting Rios's golden rule argument.

## C.    Cumulative Error

¶ 40    Because we haven't identified any error, we also reject Rios's contention that the cumulative impact of the alleged errors requires reversal. *See People v. Conyac*, 2014 COA 8M, ¶ 152 ("The doctrine of cumulative error requires that numerous errors be committed, not merely alleged.").

## III.    Disposition

¶ 41    We affirm the judgment.

JUDGE PAWAR and JUDGE MEIRINK concur.